# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEPHRET HARVEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-4200** |
| **O. KENT ANDREWS, WARDEN** | **SECTION "J"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Stephret Harvey, is incarcerated in the Allen Correctional Center

in Kinder, Louisiana.[2] On July 10, 2003, Harvey was charged by bill of information in

Orleans Parish with one count of armed robbery and one count of second degree

kidnapping.[3] The Louisiana Fourth Circuit Court of Appeal summarized the facts of the

case in relevant part as follows:

> At trial, Monica Walls, the victim, testified that at about 11:30 p.m.
> on June 8, 2003, she took the St. Charles Avenue streetcar to St. Andrew
> Street and walked toward her friend's house on Coliseum Street. When she
> was almost to the house, she heard a car stop and then loud steps behind
> her. She looked back to see a man later identified as Harvey. He grabbed
> her by the neck and demanded her money. She told him she had none. He
> took her purse and forced her to walk back to his car. He opened the trunk
> and told her to get in. She refused, and he said, "Don't get loud because I
> don't have a problem with shooting you." He closed the trunk and forced
> her into the passenger's seat. He drove to the Hibernia Bank and told her
> to withdraw money. As she walked to the ATM, he said, "Don't forget that
> I have my little friend here." Ms. Walls testified that she did what he said
> because she thought he had a gun. At trial she produced her bank
> statement, which indicated that she had withdrawn $300 from the 3540 St.
> Charles Avenue Hibernia on June 9th. When she handed him the money,
> he told her that after he purchased gasoline he would release her. He drove
> to a service station at Claiborne Avenue and Washington Street. She did
> not run when he got out to pump the gasoline because she was "numb" with
> fear that he would shoot her. She testified that Harvey told her then that he
> had one more stop to make, and he drove to a motel. He parked the car
> about one hundred feet from the lobby. She testified that he said he was
> going in to pay someone, and when he returned, he moved the car to park
> in front of a room. He told her to get out of the car, unlocked the door of

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 7/11/03.

the room and tried to force her into it. She testified that she "freaked" and ran toward the lobby. There she explained that she would rather be shot than raped. Harvey got into the car and drove away. The motel manager called the police. Later Ms. Walls was shown a photo lineup, and she selected Harvey's picture from the group.

Mr. Gant Allen of Mason's Motel testified at trial that a person requesting a room is required to show identification. Mr. Allen showed the court a registration card from the motel on which room 106 had been rented at 12:13 a.m. on June 9th. When Harvey requested a room, Mr. Allen said he had to ask him three times for identification before Harvey complied. As Harvey returned to his car, Mr. Allen walked upstairs to spray rooms with roach spray. He noticed that Harvey and a woman were getting out of a car, and he saw Harvey grab the woman who began screaming. Mr. Allen yelled, "Hey." Harvey then jumped in the car and drove away. The woman, who was hysterical, came to the lobby. Later, Mr. Allen was shown a photo lineup, and he selected Harvey's picture.

Detective John Hartman investigated the incident. He took the receipt showing Harvey's identification and was able to get a picture of him. The detective prepared a photo lineup, which he showed to Ms. Walls and Mr. Allen.

State v. Harvey, 897 So.2d 919 (La. App. 4th Cir. 2005) (Table); State Record Volume 2 of 6, Fourth Circuit Opinion, 2004-KA-0879, pages 1-3, March 23, 2005.

Harvey was tried before a jury on February 5, 2004, and he was found guilty of the lesser included offenses of simple robbery and simple kidnapping.[4] At a hearing on March 2, 2004, the state trial court denied Harvey's motions for new trial and for post-verdict judgment of acquittal.[5] The state trial court then sentenced Harvey to serve

---

[4]St. Rec. Vol. 1 of 6, Trial Minutes, 2/5/04; Verdict Form, Count 1, 2/5/04; Verdict Form, Count 2, 2/5/04; St. Rec. Vol. 3 of 6, Trial Transcript, 2/5/04.

[5]Id.; St. Rec. Vol. 2 of 6, Motion for New Trial, 3/2/04; Motion for Post-Verdict Judgment of Acquittal, 3/2/04.

seven (7) years in prison for simple robbery and five (5) years in prison for simple kidnapping, with the sentences to run consecutively and to any other sentence he was serving.[6]  At the same hearing, the court denied Harvey's motion to reconsider the sentence and his motion to quash the multiple bill, which had been filed by the State on February 17, 2004.[7]  The court then found Harvey to be a third felony offender.[8]

On May 28, 2004, the state trial court resentenced Harvey as a third offender to serve 12 years in prison without benefit of parole, probation, or suspension of sentence on the simple robbery count, to run consecutively to the sentence imposed on the simple kidnapping count and any other sentence he was serving.[9]  The court denied Harvey's motion to reconsider that sentence.

On direct appeal, Harvey's appointed counsel filed a brief with the Louisiana Fourth Circuit requesting errors patent review but also stating, pursuant to Anders v. California, 386 U.S. 738 (1967), that were no non-frivolous grounds for appeal.[10]  Harvey

---

[6]St. Rec. Vol. 1 of 6, Hearing Minutes, 3/2/04.

[7]Id.; St. Rec. Vol. 1 of 6, Multiple Bill, 2/17/04; St. Rec. Vol. 2 of 6, Motion to Reconsider Sentence, 3/2/04; Motion to Quash Multiple Offender Bill of Information, 3/2/04.

[8]Id.

[9]St. Rec. Vol. 1 of 6, Minute Entry, 5/28/04.

[10]St. Rec. Vol. 2 of 6, 4th Cir. Opinion, 2004-KA-0879, p.4, 3/23/05; Appeal Brief, 2004-KA-0879, 9/1/04.

did not file an additional brief.[11]  On March 23, 2005, the court affirmed the convictions and sentences, after amending the multiple offender sentence to allow for the possibility of parole.[12]

Harvey's conviction appeared to become final 30 days later, on April 22, 2005, because he did not seek rehearing or file for timely review in the Louisiana Supreme Court.[13]  Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003)) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)); Wilson v. Cain, 564 F.3d 702 (5th Cir. 2009) (timely filed motion for rehearing must be considered in determining the finality of a conviction).

Nine months later, on January 25, 2006, Harvey mailed a document entitled "Application for Extension of Time in which to File Application for Writ of Certiorari" to the Louisiana Supreme Court.[14]  In that pleading, Harvey conceded that he had not timely filed for review of his direct appeal in 2005, and he sought time to file some sort

---

[11]Id. at p.4.

[12]Id.

[13]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.

[14]St. Rec. Vol. 4 of 6, Copy of La. S. Ct. Application for Extension of Time, dated 1/25/06.

of writ application. A member of the court's central staff wrote to Harvey on March 17, 2006, stating:[15]

> We have received your request for extension. You may have 60 days from the date of this letter to file your application. Please enclose this letter with your application.

Thereafter, on April 11, 2006, Harvey submitted a writ application, which was filed by the Louisiana Supreme Court on June 6, 2006, seeking review of his sentence imposed by the state trial court without benefit of parole.[16] The Louisiana Supreme Court denied the application pursuant to La. Code Crim. P. 930.3 and State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996), indicating that the claim was inappropriate for post-conviction review.[17]

Three months later, on April 17, 2007, Harvey mailed an application for post-conviction relief to the state trial court, alleging ineffective assistance of trial counsel and a violation of the constitutional prohibition against double jeopardy. Although the record does not contain a file-stamped copy of this application, the State concedes that Harvey

---

[15]St. Rec. Vol. 4 of 6, Letter to Harvey from Central Staff, 3/17/06.

[16]St. Rec. Vol. 4 of 6, La. S. Ct. Writ Application, 06-KH-1385, 6/6/06 (signed 4/11/06, postal metered 4/12/06).

[17]State ex rel. Harvey v. State, 948 So.2d 162 (La. 2007); St. Rec. Vol. 4 of 6, La. S. Ct. Order, 2006-KH-1385, 1/26/07. In Melinie, the Louisiana Supreme Court, relying on La. Code Crim. P. art. 930.3, held that claims of errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

filed this post-conviction application in April 2007.[18]  According to Harvey's verified state court pleadings, the application was filed on April 17, 2007.[19]

Harvey later filed an application for writ of mandamus with the Louisiana Fourth Circuit, stating that he had not received a response from the state trial court and requesting an order that the court rule on his post-conviction claims.[20]  On September 5, 2007, the appellate court reviewed his claims and denied the writ application because he was not entitled to relief.[21]

On September 25, 2007, Harvey submitted a writ application, which was filed by the Louisiana Supreme Court on October 3, 2007.[22]  The court denied the application on June 20, 2008, because it sought untimely relief under La. Code Crim. P. art. 930.8 and State ex rel. Glover v. State, 660 So.2d 1189 (La. 1995).[23]

---

[18]Rec. Doc. No. 11, p.4.

[19]St. Rec. Vol. 5 of 6, 4th Cir. Writ Application, 2007-K-1047, p.2, p. 5 (Affidavit verifying the Fourth Circuit writ application), Appx. H-1 (copy of post-conviction application), 8/21/07.

[20]St. Rec. Vol. 5 of 6, 4th Cir. Writ Application, 2007-K-1047, 8/21/07 (signed 8/3/07).

[21]St. Rec. Vol. 5 of 6, 4th Cir. Order, 2007-K-1047, 9/5/07.

[22]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 07-KH-1937, 10/3/07 (signed 9/25/07, postmarked 9/25/07).

[23]State ex rel. Harvey v. State, 983 So.2d 1268 (La. 2008); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2007-KH-1937, 6/20/08.  La. Code Crim. P. art. 930.8 provides a two-year period for a defendant to file for post-conviction relief in the state courts.  In Glover, the Louisiana Supreme Court held that an appellate court can deny post-conviction relief as untimely under Article 930.8, even if the lower court addressed the merits or did not consider timeliness.

II.     FEDERAL HABEAS PETITION

On June 26, 2009, the clerk of this court filed Harvey's petition for federal habeas corpus relief in which he asserts three grounds for relief:[24] (1) Counsel gave ineffective assistance at trial. (2) He was subjected to multiple punishments for the same course of conduct in violation of the constitutional prohibition against double jeopardy. (3) His due process rights to a fair trial under the 6th and 14th Amendments were violated through improper cross-examination by the prosecutor that prejudiced the jury in spite of his actual innocence.

The State filed a response in opposition to the petition, arguing that Harvey's federal petition was not timely filed,[25] arguing that Harvey failed to file his federal petition within one year after exhaustion of his state court remedies.

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[26] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198

---

[24]Rec. Doc. No. 1.

[25]Rec. Doc. No. 11.

[26]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

(5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to Harvey's petition, which, for reasons discussed below, is deemed filed in this federal court on June 18, 2009.[27]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). In this case, the State argues that Harvey's petition was not timely filed in this federal court.

For the following reasons, I find that Harvey's federal petition should be deemed timely filed, but that his claims must be dismissed on other grounds. The record establishes that Harvey did not exhaust state court remedies as to his due process/fair trial claim, and that the ineffective assistance of counsel and double jeopardy claims were procedurally barred from review by the Louisiana Supreme Court in its June 20, 2008,

---

[27]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). Harvey's petition was actually filed by the clerk of court on June 26, 2009, when the filing fee was paid. Harvey has presented "Inmate Funds Withdrawal Request" forms which reflect that he presented the envelope containing his federal petition to prison officials for mailing on June 18, 2009. Rec. Doc. No. 12. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. <u>See Cousin v. Lensing</u>, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing <u>Spotville</u>, 149 F.3d at 374).

ruling relying on La. Code Crim. P. art. 930.8 and <u>State ex rel. Glover</u>. This report therefore addresses the timeliness of the petition and the procedural default and exhaustion doctrines, without need for further briefing from the parties.

## IV.  TIMELINESS

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[28] <u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001). Harvey's conviction was affirmed by the Louisiana Fourth Circuit on April 22, 2005. He did not pursue immediate and timely direct review in the Louisiana Supreme Court. La. S. Ct. Rule X§5 (allowing a petitioner 30 days from appellate court's judgment to mail or file a timely writ application); <u>Butler</u>, 533 F.3d at 317, 319.

---

[28]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

On January 25, 2006, however, Harvey requested and was granted by the court's central staff a 60-day period of time to file for review of the claims raised on direct appeal. Harvey was proceeding pro se at the time he requested this extension of time, and his pro se request must be broadly construed. The Louisiana Supreme Court's response to Harvey's request for an extension of time came in the form of a letter from court staff, <u>not</u> an order from the court itself. The letter response, while clearly granting an extension, is unclear in terms of describing the precise purpose for which the extended time period was being provided. One possible interpretation of this informal exchange is that the letter from the court's staff was the granting of an out-of-time direct appeal. In light of the recent decision of the United States Supreme Court in <u>Jiminez v. Quarterman</u>, __ U.S.__, 129 S. Ct. 681, 686-87 (2009) (where a state court grants a criminal defendant the right to file an out-of-time appeal during state collateral review, his judgment is not yet final for purposes of seeking federal habeas review),[29] and in an abundance of caution, I construed that this unclear extension may have been the granting of an out-of-time direct appeal, which benefits Harvey in determining the date of the finality of his conviction for purposes of evaluating timeliness under the AEDPA.

---

[29]In my view, <u>Jiminez</u> casts serious doubt upon the old Fifth Circuit precedent relied upon in <u>Bowie v. Cain</u>, 33 Fed. Appx. 705, 2002 WL 432675 at *2, *3 (5th Cir. Mar. 7, 2002) (Table, Text in Westlaw) ("despite the alleged extension letter [from Central Staff], <u>our</u> <u>precedent</u> does not permit us to construe either that letter or the Louisiana Supreme Court's subsequent one-word denial of Bowie's application as a waiver of Rule X, § 5(a) that renders his federal petition timely") (citing <u>Williams v. Cain</u>, 217 F.3d 303, 308 (5th Cir. 2000) (emphasis added)).

On January 26, 2007, the Louisiana Supreme Court denied the writ application Harvey filed after receiving this extension. If this order is construed as the end of his direct appeal process permitted via the extension of time granted by the court, Harvey's conviction became final 90 days later, on April 26, 2007, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

Thus, under a literal application of the statute, Harvey had one year from the date his conviction became final, or until April 25, 2008, to file his federal habeas corpus petition, which he did not do. His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

The AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme

Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

<u>Flanagan</u>, 154 F.3d at 199 n.1; <u>accord</u> <u>Brisbane v. Beshears</u>, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); <u>Gray v. Waters</u>, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. <u>Pace</u>, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); <u>Williams v. Cain</u>, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting <u>Villegas v. Johnson</u>, 184 F.3d 467, 469 (5th Cir. 1999)); <u>Smith v. Ward</u>, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness

consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. <u>Causey v. Cain</u>, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" <u>Carey v. Saffold</u>, 536 U.S. 214, 219-20 (2002); <u>Williams</u>, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. <u>Dillworth v. Johnson</u>, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); <u>Nara v. Frank</u>, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. <u>Godfrey v. Dretke</u>, 396 F.3d 681, 686-88 (5th Cir. 2005).

At the time Harvey's conviction became final, April 26, 2007, he already had pending in the state trial court the application for post-conviction relief, which he filed

on April 17, 2007. That application is considered to have remained pending in the state courts until the Louisiana Supreme Court denied his related writ application on June 20, 2008. Thus, the one-year AEDPA limitations period began to run on June 21, 2008, and did so until June 18, 2009, when Harvey requested that the prison mail his application to this federal court.[30]

Under this calculation, only 362 days of the one-year AEDPA statute of limitations period passed before Harvey is considered to have filed his federal petition by handing it to prison officials for mailing to the court. His federal petition is therefore timely. However, Harvey's petition still must be dismissed on other grounds.

V.    PROCEDURAL DEFAULT

In this federal petition, Harvey raises three claims, two of which were presented to the state courts on post-conviction review: (1) Counsel provided ineffective assistance at trial. (2) He was subjected to multiple punishments for the same course of conduct in violation of the constitutional prohibition against double jeopardy. On June 20, 2008, the Louisiana Supreme Court denied Harvey's application as untimely under La. Code Crim. P. 930.8 and State ex rel. Glover. This was the final ruling on these claims by the state courts. Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

_____

[30]See Rec. Doc. No. 12, p. 8 (Inmate Funds Withdrawal Request dated 6/18/09).

For the following reasons, these two claims are procedurally barred, and may not be addressed by this court. The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim. <u>Nobles</u>, 127 F.3d at 420. This court has discretion to raise procedural default sua sponte, provided the petitioner has notice that the issue is being considered. <u>Fisher v. State</u>, 169 F.3d 295, 301 (5th Cir. 1999); <u>Magouirk v. Phillips</u>, 144 F.3d 348, 358 (5th Cir. 1998).

Accordingly, **petitioner is hereby specifically instructed that this report and recommendation are notice to him that this court is sua sponte raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report**. <u>Magouirk</u>, 144 F.3d at 348.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the federal claim and adequate to support that judgment. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991); <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997); <u>Amos v. Scott</u>, 61 F.3d 333, 338 (5th Cir. 1995) (citing <u>Harris v. Reed</u>, 489 U.S. 255, 260, 262 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. <u>Amos</u>, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. Harris, 489 U.S. at 263; Glover, 128 F.3d at 902. In this case, the last reasoned decision of the Louisiana Supreme Court in writ application No. 2007-KH-1937 relied on La. Code Crim. P. art. 930.8 and State ex rel. Glover to deny relief as untimely.

A.    INDEPENDENT AND ADEQUATE

For the foregoing state law procedural bars to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. Amos, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. Glover, 128 F.3d at 902.

The United States Fifth Circuit Court of Appeals in Glover v. Cain held that denial of relief premised on the untimeliness of a claim under La. Code Crim. P. art. 930.8 "is sufficient to fulfill the independence requirement" of the procedural default doctrine. Glover, 128 F.3d at 902. The same is true in this case. The Louisiana Supreme Court's ruling was clear and express in its reliance on Article 930.8 and State ex rel. Glover when denying Harvey's 2007 writ application.

The United States Fifth Circuit has also squarely held that because "Louisiana courts have regularly invoked [Article 930.8] to bar untimely claims," it is an "adequate" rule, i.e., it "is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." Id. (citing Dugger v. Adams, 489 U.S. 401, 410 n.6 (1989); Johnson v. Mississippi, 486 U.S. 578, 587 (1988); and Amos, 61 F.3d at 339).

Because the Louisiana Supreme Court's decision rested on an independent and adequate state rule of procedural default, this court may not review Harvey's first two claims raising ineffective assistance of counsel and a double jeopardy violation.

B.    CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." Glover, 128 F.3d at 902 (citing Coleman, 501 U.S. at 731-32); Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed

to raise the claim despite recognizing it, does not constitute cause for a procedural default.  Id. at 486.

In this case, Harvey has not offered any cause for his default which would excuse the procedural bar imposed by the Louisiana Supreme Court.  My review of the record does not support a finding that any factor external to the defense prevented Harvey from raising these claims in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  Hogue, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Harvey's claims of ineffective assistance of counsel and double jeopardy violation are therefore procedurally barred from review by this federal habeas corpus court.  See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state

procedural rule concerning time restriction on filing for state post-conviction relief), vacated on other grounds, 522 U.S. 87 (1998).[31]

C.    FUNDAMENTAL MISCARRIAGE OF JUSTICE

Harvey may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); Nobles, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

---

[31]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. Id.

Harvey does not present any indication and the record contains nothing that suggests his actual innocence on the underlying conviction. He fails to present any evidence or persuasive argument of innocence that was not already presented to and resolved by the jury at trial and the state courts on subsequent review. His claims of innocence appear based on the same testimony considered by the jury at trial and the state courts on subsequent review, which is not sufficient to overcome the procedural bar.

For these reasons, Harvey has failed to overcome the procedural bar to two of the three claims he asserts in this federal habeas petition. His claims of ineffective assistance of counsel and double jeopardy violation are procedurally barred and must be dismissed with prejudice for that reason.

## VI.    FAILURE TO EXHAUST

Harvey asserts one additional claim that his due process rights to a fair trial under the Sixth and Fourteenth Amendments were violated through improper cross-examination and the replaying of the 911 tape by the prosecutor which prejudiced the jury in spite of his actual innocence. This claim has not been previously presented to any state court and is not exhausted.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419.

"A federal habeas petition should be dismissed if state remedies have not been exhausted as to <u>all</u> of the federal court claims." <u>Whitehead</u>, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); <u>Rose</u>, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the <u>highest</u> state court." <u>Id</u>. (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>accord</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." <u>Whitehead</u>, 157 F.3d at 387 (citing <u>Picard</u>, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents <u>new legal theories</u> or <u>new factual claims</u> in his federal application." (emphasis added) <u>Id.</u> (citing <u>Nobles</u>, 127 F.3d at 420). It is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the Louisiana Supreme Court. <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

Thus, to have exhausted his claims in state court, Harvey must have fairly presented the same claim and legal theory he urges in this petition to the Louisiana courts, through the Louisiana Supreme Court, so that each state court has an opportunity to address the claims. The record reflects that Harvey failed to do so.

Nevertheless, the failure to exhaust state court remedies with respect to Harvey's third claim does not prevent this court from dismissing the claim on the merits since relief is not warranted. 28 U.S.C. § 2254(b)(2).

VII. <u>STANDARDS OF A MERITS REVIEW</u>

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), <u>cert. denied</u>, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is

objectively unreasonable." <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert.</u> <u>denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

## VIII.  DENIAL OF DUE PROCESS AND A FAIR TRIAL

Harvey alleges that he was denied due process and a fair trial based on the prosecutor's prejudicial cross-examination of him, which caused the jury to ignore his innocence.  Specifically, Harvey alleges that the prosecutor's questions and comments during cross-examination of him were designed to cause confusion and prejudice in the jury's minds about his version of the events that night.

He complains that the prosecutor made references to his prior convictions which were unduly prejudicial and not probative.  He claims that these references led the jury to assign more credibility to the State's witnesses.  He also argues that the state trial court erred in allowing the jury to hear the 911 audio tape again before their deliberations, over his counsel's objection.

Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review errors of state law or the admissibility of evidence under state law.  <u>Jernigan v. Collins</u>, 980 F.2d 292, 298 (5th Cir. 1992).  States are free to implement procedures regarding the admission of evidence and testimony at trial,

provided that those procedures do not infringe on a constitutional guarantee.  Burgett v. State of Texas, 389 U.S. 109 (1967).

Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.  Lisenba v. People of the State of California, 314 U.S. 219, 236-37 (1941); Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).  A criminal proceeding is fundamentally unfair when an error fatally infects the trial or is of such a quality that it necessarily prevents a fair trial.  Id.

The error, if any, must have had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).  The petitioner must show that "there is more than a mere reasonable possibility that [the error] contributed to the verdict.  It must have had a substantial effect or influence in determining the verdict."  Woods v. Johnson, 75 F.3d 1017, 1026 (5th Cir.1996) (emphasis omitted).

The same is true when considering improper jury argument by the prosecution. The argument does not present a claim of constitutional magnitude in a federal habeas action unless the petitioner "demonstrate[s] that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would

not have occurred but for the improper remarks." Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988); Darden v. Wainwright, 477 U.S. 168, 181 (1986); Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir. 1987); Hogue v. Scott, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994). The remark must be evaluated in the context of the entire trial. Greer v. Miller, 483 U.S. 756, 765-66 (1987) (citing Darden, 477 U.S. at 179); Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985).

In this case, Harvey's complaint is that the prosecutor asked him questions that were intended to create doubt in the jurors' minds about his version of the facts of the case. That is precisely the legitimate purpose for cross-examination.

> . . . Noting that its earlier decisions had described cross-examination as the "greatest legal engine ever invented for the discovery of truth," the Supreme Court stated in Ohio v. Roberts, 448 U.S. 56, 100 S. Ct. 2531, 2537 n.6, 65 L. Ed.2d 597 (1980) that "one critical goal of cross-examination is to draw out discrediting demeanor to be viewed by the factfinder." "[T]he cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." Davis v. Alaska, 415 U.S. at 316, 94 S.Ct. at 1110.
> To be sure, cross-examination must be relevant. United States v. Love, 599 F.2d 107, 108 (5th Cir.), cert. denied, 444 U.S. 944, 100 S. Ct. 302, 62 L. Ed.2d 312 (1979), and have some probative value, Cloud v. Thomas, 627 F.2d 742, 744 (5th Cir. 1980). Nevertheless, "the presumption favors free cross-examination," United States v. Fontenot, 628 F.2d 921, 924 (5th Cir. 1980), and "[c]ross-examination of a witness in matters relevant to credibility ought to be given wide scope," United States v. Williams, 592 F.2d 1277, 1281 (5th Cir. 1979).

Greene v. Wainwright, 634 F.2d 272, 275 (5th Cir. 1981).

In this case, the prosecutor's questions about his credibility and probing into the veracity of his story were well within the scope of permissible cross-examination. When a criminal defendant takes the stand in his own defense, he places his character for truthfulness at issue. United States v. Waldrip, 981 F.2d 799, 803 (5th Cir. 1993). Under Louisiana law, the State was allowed to use his prior convictions to challenge Harvey's credibility. Banks v. McGougan, 717 F.2d 186 (5th Cir. 1983). Questioning Harvey about his prior criminal history was probative of the credibility determination.

The ultimate resolution of Harvey's credibility was a decision for the jury. The jury, in performing its duty, apparently believed the State's witnesses over Harvey's version of the story, and that determination is not to be disturbed on collateral review. See Green v. Johnson, 160 F.3d 1029, 1047 (5th Cir. 1998) (The fact that conviction may have been based on the credibility of witness testimony is insufficient to supplant the jury's determination of guilt).

As for the playing of the 911 tape, Harvey also has failed to demonstrate a constitutional error. Harvey does not argue that the tape was inadmissable under state law. Instead, construing his argument broadly, he suggests that playing the tape right before deliberations was unduly prejudicial.

The 911 tape was played for the jury, without objections, during the direct testimony of the victim.[32]  The victim testified that the tape was an accurate reflection of the 911 call made that night.  The information from the tape was corroborated by other testimony from the State's witnesses, and the tape was only part of the evidence produced in support of the State's case.  See Sherman v. Scott, 62 F.3d 136, 142 n.6 (5th Cir. 1995) (evidence is not unduly prejudicial where it is corroborated by other evidence).

At trial, the jury heard the testimony of the victim, who gave a detailed description of the events, from the time Harvey confronted her on Coliseum Street, then forced her to withdraw money on the promise that she would be released, and through to the time where he attempted to force her into the hotel room.[33]

The jury also heard the testimony of the motel manager.  He testified that Harvey was reluctant to produce identification required at check-in at the motel.[34]  He also testified that he heard the victim scream as Harvey tried to get her into the motel room.[35]  Allen also testified that the victim was "hysterical" and, when he yelled out, Harvey

---

[32]St. Rec. Vol. 3 of 6, Trial Transcript, p. 17, 2/5/04.

[33]Id., pp. 6-16.

[34]Id., pp. 33-36.

[35]Id., pp. 36-39.

quickly drove away.[36]  The 911 tape was played for the motel manager, and he identified it as the call he placed for the victim that night.[37]

Later in the trial, Harvey testified that he and the victim were involved in a drug deal gone bad.  He testified that she was the one who wanted to go to the motel so she could be in a comfortable place to do drugs.[38]  He also testified that the victim inexplicably "freaked out" when they got to the room.[39]  In conflict with the motel manager's testimony, Harvey claimed that he went back to ask the manager for his deposit money back.

During closing argument, in an effort to refute Harvey's testimony, the prosecutor recalled for the jury that the victim had been scared during the 911 call.  In support of his argument, he played the tape again for them to hear her voice.[40]  Harvey's counsel objected, without stating a basis, and the state trial court overruled it.

This evidentiary ruling is not reviewable by this federal court.  In addition, Harvey has not shown how the playing of the tape was a violation of due process or the denial of a fair trial for this court to consider.  The tape was already in evidence without

---

[36]Id., p. 39.

[37]Id.

[38]Id., pp. 73-76.

[39]Id., pp. 81-82.

[40]Id., p. 116.

objection. It had been played previously for the jury and the witnesses to hear. The State used the tape during closing argument to counter Harvey's suggestion that the victim was voluntarily involved in the events that evening.

The fact that the evidence was used to prove Harvey's guilt does not make it impermissibly prejudicial. The decision to find the testimony of the State's witnesses and the 911 tape more credible than Harvey's version of the story was well within the appropriate province of the jury. Harvey has not shown any constitutional error in allowing the tape to be played during closing arguments.

For the foregoing reasons, Harvey has failed to establish denial of either due process or a fair trial arising from the State's cross-examination or use of the 911 tape during closing arguments. Harvey's unexhausted claim is without merit and should be dismissed with prejudice without requiring further exhaustion of state court remedies. 28 U.S.C. § 2254(b)(2).

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the petition of Stephret Harvey for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of

plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object. Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[41]

New Orleans, Louisiana, this ___13th___ day of January, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[41]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.